**MRS. B., on her own behalf and, as mother and guardian, on behalf of J.B., and J.B. Plaintiffs,**

v.

**LITCHFIELD BOARD OF EDUCATION John Tindall–Gibson, individually, and in his official capacity as Superintendent, Litchfield Public Schools Defendants.**

**No. CIV. 3:03CV1152(PCD).**

United States District Court, D. Connecticut.

June 1, 2004.

Rachel M. Baird, Law Office of Rachel M. Baird, Torrington, CT, for B., on her own behalf & as mother & guardian o/b/o JB, J.B., Plaintiffs.

Brian W. Smith, Berchem, Moses & Devlin, P.C., Marsha Belman Moses, Berchem, Moses & Devlin, P.C., Milford, CT, for Litchfield Bd of Ed, John Tindall–Gibson, I/O as Supt, Litchfield Public Schools, Gary H. Zaremski, Defendants.

### RULING ON PLAINTIFFS' MOTION TO VACATE ORDER

DORSEY, District Judge.

Plaintiffs move to vacate the Court Order dated April 2, 2004 [Doc. No. 38], on the basis that they did not receive a copy of the draft order. Notwithstanding Defendants' assertion that the draft was dispatched to Plaintiffs, their assertion that they did not receive the draft order was credited, and Plaintiffs were ordered to file any substantive objections they wished to raise on or before May 14, 2004. On May 14, 2004, Plaintiffs filed an objection [Doc. No. 44]. Instead of raising substantive objections, as instructed in the Order, Plaintiffs argue that this Court lacked jurisdiction to enter the Order because Defendants failed to exhaust their administrative remedies in seeking additional medical evaluations.

## I. Background [1]

Pursuant to the IDEA,[2] Plaintiffs filed this action on June 30, 2003 [Doc. No. 1]. On January 27, 2004, pursuant to a settlement/status conference, the Court issued an Order to facilitate "formulat[ion] of a schedule by which the minor Plaintiff can be evaluated for entitlement under [the IDEA]." Jan. 27 Order [Doc. No. 27]. The January 27 Order provided, among other things, that "[o]n or before February 2, 2004, Defendants shall communicate to Plaintiff's attorney ... [e]ach examiner, and their field of inquiry, to be requested to examine the minor Plaintiff." Jan. 27 Order ¶1(c) [Doc. No. 27]. It further instructed that "Plaintiffs will comply with each such request within 5 days, including, as to 1(c), scheduling an appointment at the examiner's earliest possible date." Jan. 27 Order ¶2 [Doc. No. 27]. The January 27 Order provided that "Plaintiff is reserved the right to challenge any action or position taken by Defendants in the course of the above proceedings, complying with required administrative proceedings before resort to court review." Order [Doc. No. 27].

On February 17, 2004, Plaintiffs filed a status report, stating that "[t]he parties have not reached an agreement on proceeding past number 1 of the Order despite an exchange of correspondence and one telephone conversation." Pl. Status Report [Doc. No. 30]. In an Order issued on February 20, 2004, the Court noted that Plaintiffs' status report was "hardly reflective of the Court's concern that J.B. is not the highest focus of attention" for Plaintiffs. Ruling on Pl. Mot. to Seal and Order

[Doc. No. 31]. It was also found that Defendants' requests and authorizations were in compliance with the Court Order, and the Court reiterated its intention that "Defendants be provided with all relevant information at the earliest possible time so that if a PPT was required by law, and thus [the child's] entitlement [to] ... those procedures would be accomplished immediately." *Id.* Plaintiffs were ordered to comply with Defendants' requests on or before February 27, 2004. *Id.*

On February 26, 2004, Plaintiffs filed a status report pronouncing that "Plaintiffs will not comply with the [February 20, 2004] Court Order." Pl. Status Report [Doc. No. 32]. On February 27, 2004, the Court issued an Order directing the parties to appear at a show cause hearing on March 5, 2004 [Doc. No. 25]. In the February 27 Order, the Court again emphasized the intention "to advance the education of J.B. by insuring the recognition and implementation of J.B.'s educational needs to the extent of and in accordance with the IDEA as will permit and enable Defendants to fulfill their obligations to J.B. in accordance with the IDEA."

Approximately six weeks after the March 5, 2004 show cause hearing, another Order was issued, in which Plaintiffs were directed to comply with various medical examinations and evaluations so that Defendants could determine, and comply with if necessary, their responsibilities to the minor child under the IDEA. Apr. 21, 2004 Order [Doc. No. 38].

Plaintiffs subsequently filed their Motion to Vacate the April 21 Order, on the

---

1. Familiarity with all previous Rulings is presumed.

2. In addition to the IDEA, Plaintiffs also assert claims pursuant to the Rehabilitation Act of 1973, the Americans with Disabilities Act, the Ku Klux Klan Act of 1871, the Due Process Clause of the Fourteenth Amendment to the United States Constitution, the Health Insurance and Portability and Accountability Act of 1996, as well as CONN. GEN. STAT. § 10–76h.

basis that they did not receive a draft order thereby depriving them of their opportunity to be heard and to object. The Court issued yet another Order to provide Plaintiffs with another opportunity to raise specific objections to the April 21 Order. May 3, 2004 Order [Doc. No. 41]. Rather than raising specific objections, Plaintiffs argue that this Court lacked jurisdiction to enter the Order because Defendants failed to exhaust their administrative remedies in seeking additional medical evaluations.

## II. Discussion

### A. Exhaustion of Administrative Remedies and Due Process Safeguards

■ The purpose of the IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for employment and independent living." 20 U.S.C. § 1400(d)(1)(A). The statute "establishes various procedural safeguards that guarantee parents both an opportunity for meaningful input into all decisions affecting their child's education and the right to seek review of any decisions they think inappropriate." *Honig v. Doe*, 484 U.S. 305, 311–312, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988);[3] *see also* 20 U.S.C. § 1412(a)(6), §§ 1415(a), (b), (d), (f), (h). "At the conclusion of any such [due process] hearing [pursuant to the statute], both the parents and the local educational

agency may seek further administrative review and, where that proves unsatisfactory, may file a civil action in any state or federal court." *Honig*, 484 U.S. at 312, 108 S.Ct. 592 (citing §§ 1415(c), (e)(2)).

■ The statute provides that before an aggrieved party may bring a suit in federal or state court for an alleged IDEA violation, she must exhaust administrative remedies. 20 U.S.C. § 1415(l). "In situations where exhaustion of the IDEA's administrative remedies is mandated, the failure to do so deprives [the] court of subject matter jurisdiction over the plaintiff's claims." *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 789 (2d Cir.2002) (citation omitted). "[E]xhaustion is not necessary under the IDEA where it would be futile to resort to the due process procedures or where it is improbable that adequate relief can be obtained by pursuing administrative remedies." *Id.* (internal citation and quotation omitted).

■ Now Plaintiffs, who bought suit in this Court, argue that Defendants have failed to exhaust administrative procedures. Count One of Plaintiffs' Amended Complaint arises out of a Final Decision and Order resulting from an administrative hearing that commenced at Defendants' request after Mrs. B, the child's parent, refused to provide the Local Education Agency with the results of a recent medical evaluation. Pl. Amended Compl. Exh 1, Final Decision and Order, Summary paragraph.[4] It is clear that Plain-

---

**3.** "These safeguards include the right to examine all relevant records pertaining to the identification, evaluation, and educational placement of their child; prior written notice whenever the responsible educational agency proposes (or refuses) to change the child's placement or program; an opportunity to present complaints concerning any aspect of the local agency's provision of a free appropriate public education; and an opportunity for 'an impartial due process hearing' with

respect to any such complaints." *Honig*, 484 U.S. at 311–312, 108 S.Ct. 592 (citing §§ 1415(b)(1), (2)).

**4.** The Complaint alleges that

On May 1, 2003, the [Litchfield Board of Education] requested an administrative hearing pursuant to the IDEA, 20 U.S.C. § 1415, and Connecticut General Statutes, § 10–76h, regarding two issues:

tiffs are the party who evoked the jurisdiction of this Court, after being dissatisfied with the administrative process. However, now Plaintiffs allege that this Court lacked jurisdiction to issue an Order arising from issues resulting from Plaintiffs' complaint.

Plaintiffs do not cite any legal authority for the proposition that Defendants, in complying with a Court Order directed in the best interests of the child and pursuant to a suit filed by Plaintiffs, must exhaust administrative procedures when seeking medical and evaluative information while defending themselves during an ongoing suit. To require Defendants to instigate administrative procedures during an ongoing action every time the Court issues an Order or Defendants request information to determine their responsibilities under the IDEA would needlessly protract the proceedings, waste resources, and most significantly delay resolution of the matter thereby potentially harming the interests of the child.

To safeguard Plaintiffs' due process rights, the Court credited Plaintiffs' representation that they did not receive Defendants' draft order, and gave Plaintiffs an additional opportunity to respond. The Court carefully reviewed Defendants' draft order to ensure that the information sought was reasonable and necessary for Defendants to obtain all relevant information necessary to comply with their responsibilities under the IDEA, and to serve the best interests of the child.

Moreover, during the show cause hearing Plaintiffs argued that Defendants should have sought a due process hearing, and Plaintiffs questioned the Court's authority to issue its order pertaining to the evaluations. The Court asserted its authority to issue such an order, noting that

[w]e had a conference. [The Court] determined a procedure by which the Board would proceed to fulfill its obligation. The Board has done so.

I afforded your client the opportunity to interpose objections to the Board's request. I have looked at those objections. I don't find that they have any merit.

I have made that determination.... and I've entered an order that ... accomplishes the purposes of essentially accomplishing, first of all, the Board's fulfillment of its obligations; secondly, to determine what, if any, educational services this child is entitled to, and I've issued an order.

Transcript of Show Cause Hearing, Mar. 5, 2004, at 37–38 [Doc. No. 37]. In dismissing Plaintiffs' administrative hearing argument, the Court added that "I have no authority to convene an administrative hearing." *Id.* at 54.

In addition, the school board is clearly entitled to up-to-date evaluative information in order to determine what they must do, if anything, to comply with the IDEA. The Final Decision and Order arising from the May 3, 2003 administrative hearing acknowledges that the Litchfield Board of Education

is entitled to the report of the physician's evaluation which contains recommendations for accommodating the child in the school environment. The evaluations are necessary to determine whether the child is eligible to receive special education or if the services are appropri-

---

a. Whether the parent must provide a copy of the medical evaluation report completed by a mutually appointed evaluator to the LBOE; and
b. Whether the student is entitled to receive special education and related ser-

vices in the future if her parents refuse to cooperate with the LBOE's efforts to evaluate the student.
Amended Compl. ¶ 41.

ate and provided in the least restrictive environment. *The Board's obligation to provide a program to the child is conditioned on receipt of up-to-date evaluations to determine, what if any specialized instruction or placement the child currently requires.*

Pl. Amended Compl. Exh 1, Final Decision and Order, Summary paragraph (emphasis added). The Final Decision and Order further notes that

> ... *Without up-to-date evaluations the LEA has no assurance it complies with [the IDEAS'] important legal mandates.* Before a school system is liable for the special education services to a child, it first must be determine whether they are eligible or remain eligible to receive special education services. The record has little information regarding the child's need for specialized instruction.... *A school system which is liable for the special education of a student is entitled to up-to-date evaluative data and may insist on evaluations by qualified professionals who are satisfactory to school officials.*

> The school district is entitled to evaluative data on the child in order to determine its financial responsibility, if any for providing a program for a student. *Dubois v. Connecticut State Bd. of Educ.,* 727 F.2d 44, 49 (2d Cir.1984). Connecticut has long recognized that evaluations and reevaluations are key for determining the appropriate program for a child in need of special education.

Pl. Amended Compl. Exh 1, Final Decision and Order, Conclusions of Law ¶ 3 (emphasis added).

It is clear that Defendants have an entitlement for up-to-date evaluative information so that they may determine their responsibility, if any, to provide the child services under the IDEA. Throughout the proceedings, Plaintiffs' due process rights have been amply protected. In the present instance, Plaintiffs have been given numerous opportunities to raise specific objections to the Order. Requiring Defendants to summon the administrative process at this stage as they attempt to respond to a federal suit filed by Plaintiffs would not further any goals of the exhaustion doctrine or the IDEA. *See Polera v. Bd. of Educ.,* 288 F.3d 478, 487 (2d Cir. 2002) ("The IDEA's exhaustion requirement was intended to channel disputes related to the education of disabled children into an administrative process that could apply administrators' expertise in the area and promptly resolve grievances"); *Heldman v. Sobol,* 962 F.2d 148, 159 (2d Cir.1992) ("The exhaustion doctrine prevents courts from undermining the administrative process and permits an agency to bring its expertise to bear on a problem as well as to correct its own mistakes"). In order to comply with their responsibilities under the IDEA, Defendants are entitled to up-to-date evaluative information. This Court's Order does not in any way undermine the administrative process or impede the state agency from exercising its expertise. To the contrary, under these circumstances to require Defendants to seek an administrative hearing would undermine an important goal of the IDEA and the exhaustion procedure, the prompt resolution of disputes. Unnecessary delay would impede the child's best interests. Plaintiffs make no showing that their due process rights have not been protected.

## III. Conclusion

For the reasons stated herein, Plaintiffs' motion to vacate [Doc. No. 39] is denied.

SO ORDERED.